UNITED STATES BANKRUPTCY COURT          NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                  Chapter 11

ACTRADE FINANCIAL TECHNOLOGIES          Case Nos. 02-16212 (ALG)
Ltd., *et. al.*,                        and 02-16213 (ALG)

                              Debtors.     (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF OPINION

APPEARANCES:

SALISBURY AND RYAN LLP
1325 Avenue of the Americas, Suite 704
New York, NY 10019
   By: Patrick P. Salisbury, Esq.

- and -

WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
   By: Philip D. Anker, Esq.
      James H. Millar, Esq.
Attorneys for the ACTRADE LIQUIDATION TRUST

BROWN RUDNICK LLP
Attorneys for AMOS AHARONI
7 Times Square
New York, NY 10036
   By: Sigmund S. Wissner-Gross, Esq.
      May Orenstein, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion filed by the Debtors' former chief executive officer,

Amos Aharoni ("Aharoni"), that seeks reconsideration of this Court's January 7, 2009

order (the "Order"). The Order refused to approve a settlement of a securities class action pending against the Debtors, Aharoni, and other defendants in the United States District Court for the Southern District of New York. For the reasons set forth below, the motion for reconsideration is denied.

## BACKGROUND

The Debtors provided commercial financing through the issuance of an instrument called a trade acceptance draft. See the Court's prior opinion reported at 337 B.R. 791 (Bankr. S.D.N.Y. 2005). As discussed there, the Debtors collapsed in 2002 after allegations surfaced as to the veracity of their financial statements. Class actions were commenced against the Debtors, their principals, and others in the Southern District of New York (the "Class Action Litigation"), and the Debtors filed for Chapter 11 protection on December 12, 2002. The Debtors' Second Amended Plan of Liquidation (the "Plan") was confirmed on January 6, 2004.

Under the Plan, a liquidating trustee (the "Plan Trustee") was appointed to carry out the provisions of the Plan.[1] The Plan Trustee's principal tasks included (i) the collection of assets, (ii) representation of the Debtors in the resolution of one large remaining claim, filed by the trustee of Allou Distributors Inc. (the "Allou Trustee"), a debtor in a separate proceeding in the U.S. Bankruptcy Court for the Eastern District of New York, and (iii) representation in connection with the claims filed by the plaintiffs in the Class Action Litigation (the "Class Action Plaintiffs"). In 2005, the Plan Trustee entered into a Stipulation of Settlement of the Class Action Litigation (the "Settlement"), setting forth a specified distribution to the Class Action Plaintiffs, and submitted it to the

---

[1] The Debtors' first liquidating trustee resigned on September 29, 2005 and was replaced by the current liquidating trustee. (ECF Doc. No. 415.)

2

Court for approval. On March 30, 2005, the Court held a hearing on approval of the Settlement. The Allou Trustee had objected to the Settlement, arguing (correctly) that his claim had priority over the rights of the Class Action Plaintiffs and that it would be improper to provide a distribution to a lower class without liquidating his claim as a member of a senior class.[2] As the pendency of the Allou claim effectively prevented the Debtors from consummating the Settlement, the Court agreed to defer its ruling until the Allou claim had been resolved or liquidated at an amount that would permit a distribution to the Class Action Plaintiffs. There followed an unusually lengthy discovery period relating to the Allou claim, in part due to the fact there was a criminal prosecution of the Allou principals and their depositions were delayed for years.

On November 6, 2008, the Plan Trustee filed a motion informing the Court that the Allou Trustee had withdrawn his objection to the Class Action Settlement and that it was timely to consider its approval.[3] However, the Plan Trustee also informed the Court that he had become convinced that the Settlement was improper in that it provided a release to Aharoni without receipt of tangible consideration from him. Specifically, the Plan Trustee explained that the Settlement had been premised on a stipulation entered into on behalf of the Debtors' estates with Aharoni in the Delaware Chancery Court (the "Delaware Stipulation"). The Delaware Stipulation had dismissed a lawsuit against Aharoni without prejudice, in exchange for Aharoni's agreement to cooperate and provide information in connection with the collection of millions of dollars allegedly

---

[2] Securities claims are treated in the same manner as equity interests under § 510(b) of the Bankruptcy Code and are thus subordinated to creditors' claims. Under the Plan, disbursements to the Class Action Plaintiffs were therefore subordinated to full payment of unsecured claims, which the Allou Trustee purported to hold. (Second Amended Plan of Liquidation dated Dec. 11, 2008, § 8.5.)

[3] A motion seeking approval of a settlement of the Allou claim was finally filed on February 20, 2009. (ECF Doc. No. 502.)

3

missing from the Debtors' bankruptcy estates. After the Class Action Settlement had been finalized, the Delaware Stipulation had been amended to reiterate Aharoni's continuing obligation to cooperate, since the Settlement would have the effect of releasing Aharoni from liability to the estates. The Plan Trustee's papers in this Court alleged that Aharoni had, contrary to his undertaking, failed to cooperate and that facts had surfaced that Aharoni may have misappropriated $31 million of the Debtors' property.

The motion for approval of the Class Action Settlement came on for a hearing on December 16, 2008. Aharoni, the Class Action Plaintiffs and the defendants' insurers submitted papers in support of the Settlement. The Plan Trustee, on the other hand, stated that he had come to the conclusion that the Settlement was not in the best interests of the estates due to Aharoni's actions, including his alleged breaches of the Delaware Stipulation. In an oral ruling, citing the leading case of *In re Martin*, 91 F.3d 389 (3rd Cir. 1996), the Court first found that the Plan Trustee was not precluded from bringing to the Court's attention reasons not to approve a settlement, even though the Plan Trustee had originally agreed thereto. The Court then rejected the Settlement as not above the lowest level of reasonableness under the circumstances.

In *In re Martin*, a bankruptcy trustee had entered into a stipulation to settle two State causes of action, but when the settlement came before the bankruptcy court for approval, the trustee stated that circumstances had changed and that she no longer believed the stipulation was in the best interests of the estate. *In re Martin*, 1995 WL 389592, *3 (Bankr. E.D.Pa. June 28, 1995). The bankruptcy court eventually rejected the settlement as prejudicial to the estate, and an appeal was taken. The district court

reversed the bankruptcy court's order, finding that the trustee had violated her duty of good faith and fair dealing by not continuing to seek approval of a settlement she had previously agreed to. *In re Martin*, 1995 WL 434462, *1 (E.D.Pa. July 20, 1995). The Circuit Court reversed again. Noting that under the circumstances of the case the trustee faced a conflict between her duty of good faith and fair dealing in contractual negotiations and her duty to maximize the value of the estate for the benefit of all creditors, the Circuit Court concluded:

> We cannot require a trustee herself to choose between these conflicting legal obligations. Rather, Rule 9019(a) demonstrates the legislature's intent to place this responsibility with the bankruptcy court. In order to make such a determination, the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate. Accordingly, the trustee should inform the court and the parties of any changed circumstances since the entry into the stipulation of settlement. The trustee may even opt not to argue in favor of the stipulation, as was done here, if she no longer believes the settlement to be in the best interest of the estate. The trustee does not breach any term of the stipulation by doing so, for the bankruptcy court may nonetheless approve the settlement.
>
> … Accordingly, we will not constrain a bankruptcy trustee from fulfilling her statutory duty to the estate and the creditor body as a whole by preventing her from informing the court and the parties of changed circumstances.

*In re Martin*, 91 F.3d at 394. Other cases have similarly concluded that courts should consider changed circumstances between the date of a motion for approval of a settlement and the hearing on the reasonableness of the settlement. *See In re Industries, Inc.*, 283 F.3d 159, 165 (3rd Cir. 2000); *LeCompte v. Sparks*, 1997 WL 156488, *11 (N.D. Ill. April 1, 1997).

During the course of the hearing on approval of the Settlement, the Court also engaged Aharoni's counsel in the following colloquy:

> THE COURT: [A]re you able to testify today from firsthand knowledge as to whether Aharoni has or has not cooperated?
>
> * * *
>
> COUNSEL: No, no, I can't testify as to that, Your Honor.
>
> * * *
>
> THE COURT: Let me ask you one other question. Does your client desire an evidentiary hearing in connection with these proceedings, and in particular does your client desire an evidentiary hearing at which I could take evidence as to whether he has or hasn't cooperated with the trustee?
>
> COUNSEL: No, Your Honor…. the short answer is we're not seeking an evidentiary hearing. We're happy to rest on the papers and the presentation today.

(Hr'g. Tr. 18:6-8, 18:23-24, 19:14-20:9, Dec. 18, 2008). Based on the entire record before it, and the Plan Trustee's detailed allegations regarding Aharoni's failure to cooperate or explain the loss of $31 million in funds, the Court denied approval to the Settlement. The Court found that there was ample evidence in the record that Aharoni had not cooperated with the Plan Trustee, but that any such finding would have effect only in connection with the pending motion for approval of the Settlement, and obviously would not be preclusive for other purposes.

On January 7, 2009, the Court entered an Order denying approval of the Settlement, and on January 20, 2009, Aharoni filed the instant motion for reconsideration. He claims that (i) there are new developments justifying his motion—*i.e.*, after the Court's ruling, the Plan Trustee filed a Status Report which demonstrated (according to Aharoni) that the Plan Trustee's position was speculative and prejudicial to the Debtors' estates; and (ii) the Court had drawn "an incorrect adverse inference from the absence of

6

an Affidavit or Declaration from Aharoni himself …." (Aharoni's Mem. of Law, ECF Doc. # 487, p. 3). Aharoni then proceeded to "supplement" the record with a twenty-page declaration containing information regarding his purported compliance with the Delaware Stipulation. Aharoni also claims that the Court had no "jurisdiction" to determine whether he had in fact breached the Delaware Stipulation. The Plan Trustee has opposed the motion for reconsideration.[4]

## DISCUSSION

The rules governing motions for reconsideration are narrowly construed and strictly applied to avoid the resubmission of arguments that have already been considered by the Court. *Griffin Indus., Inc.*, 72 F. Supp. 2d 365, at 368 (S.D.N.Y. 1999); *In re Northwest Airlines Corp.*, 2006 Bankr. LEXIS 781, at *3 (Bankr. S.D.N.Y. Apr. 28, 2006), citing *Winkler v. Metropolitan Life Ins.*, 340 F. Supp. 2d 411, 413 (S.D.N.Y. 2004). The parties may not use a motion for reconsideration to "advance new facts, issues or arguments" that could have been part of the original record. *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.)*, 216 B.R. 713, 716 (S.D.N.Y. 1997), quoting *Great Am. Ins. Co. v. J. Aron & Co.*, 1996 U.S. Dist. LEXIS 310, at *5 (S.D.N.Y. Jan. 12, 1996). New affidavits are ordinarily barred, as a motion for reconsideration is "limited to the record that was before the Court on the original motion." *Pereira*, 216 B.R. at 716, quoting *Wishner v. Continental Airlines*, 1997 U.S. Dist. LEXIS 15302, at *3 (S.D.N.Y. Sept. 30, 1997). Instead, the movant must point to information in the

---

[4] The Plan Trustee also moved for summary dismissal of the motion on the ground that Aharoni's filing of a notice of appeal concurrently with his motion for reconsideration divested this Court of jurisdiction to decide the motion. It is established, however, that the filing of a motion for reconsideration within the ten-day appeal period suspends the period for taking an appeal, and that the appeal can only be taken after decision on the motion for reconsideration. *See* Bankruptcy Rule 8002(b); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002); 10 Collier on *Bankruptcy* ¶ 8002.08 (15th ed. rev. 2007). Accordingly, the appeal that Aharoni has purported to take from the Order is premature, and the Court has jurisdiction to decide the motion.

original record, controlling decisions that the court had overlooked, or new facts that could not have been part of the original record and that might be reasonably expected to alter the court's conclusion. *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003); *Shrader v. CSX Transp.*, 70 F.3d 255, 256 (2d Cir. 1995).

Aharoni attempts to skirt these principles by arguing that a Status Report that was filed after the hearing on the Settlement contained new facts that bear on the issues and that were not part of the original record. The question of the Plan Trustee's failure to file status reports did, in fact, first arise at the hearing at which the Court considered the reasonableness of the Settlement. At that hearing, counsel for a large shareholder expressed concern about the status of administration of the Plan and the Plan Trustee's failure to file reports. (Hr'g Tr. 38:5-39:10, Dec. 18, 2008.) The Court ordered the Plan Trustee to file a status report within 30 days, setting forth the financial condition of the Debtors' estates. (Hr'g Tr. 39:5-21, Dec. 18, 2008.)[5] The Court also observed at the hearing that the Plan Trustee's failure to file periodic status reports was not directly relevant to the issue of whether the Settlement should be approved (Hr'g Tr. 39:11-40:4, Dec. 18, 2008), but Aharoni argues again that the Status Report filed after the hearing constitutes new evidence that establishes that the Court erred in its original ruling.

The issues regarding the Status Report were and are collateral to the question of approval of the Settlement. In considering a settlement a court has to examine "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay

---

[5] The Trustee filed a status report on January 16, 2009. (ECF Doc. No. 483.) An objection has also been filed, claiming that the report failed to comply with the Court's order. (ECF Doc. No. 494.) A hearing on this matter is currently scheduled for April 21, 2009. (ECF Doc. No. 517.)

8

necessarily attending it; and (4) the paramount interest of creditors" and other parties in interest. *In re Martin*, 91 F.3d at 393. The Status Report, which contains information about the Plan Trustee's undertakings and the Debtors' financial affairs, does not bear directly on these four factors. Moreover, at the hearing, the party complaining about the Plan Trustee's failure to file status reports did not support the Settlement or urge the Court to approve it. The only parties supporting the Settlement were the Class Action Plaintiffs, the Debtors' co-defendants in the litigation, and their insurers—all parties with a direct interest in disposing of the litigation. Creditors who might be harmed by the costs of continued litigation did not object to the Plan Trustee's conclusion that the litigation should not be settled on the basis proposed.

Aharoni is also wrong when he asks the Court to admit and consider his twenty-page declaration. First, Aharoni obviously could have submitted the declaration on the motion for approval of the Settlement, and the submission of his version of the facts simply comes too late. The Court based its ruling on the record and the presentation the parties provided at the hearing. As the Plan Trustee correctly argues, Aharoni must now live with his choice and cannot resort to a motion for reconsideration to take "a second bite at the apple." *Pereira* 216 B.R. at 716. Moreover, at the hearing, Aharoni's counsel specifically disclaimed any desire for an evidentiary hearing. Thus, the record for deciding the Motion for Reconsideration properly stands as it did when the Court canvassed the facts at the hearing and found that there was no evidence to counter the

Plan Trustee's determination that Aharoni had not cooperated, despite his commitment to do so.[6]

In any event, it is and was unnecessary for the Court to make a final factual finding on whether Aharoni did or did not appropriate $31 million from the Debtors' estates or whether he complied with the obligation to cooperate with the estates under the Delaware Stipulation. In analyzing the Settlement, the Court needed not decide "the numerous questions of law and fact raised" by the parties. Rather the focus is "whether the settlement [fell] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)* 699 F.2d 599, 608 (2d. Cir. 1983), *cert. denied*, 464 U.S. 822 (1983) (internal citations omitted). *See also*, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); 10 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2007). The Settlement included a release of all of the Debtors' claims against Aharoni, and this release was in turn premised on the assumption that Aharoni was telling the truth and would cooperate in the collection of moneys due the estates. Since the Plan Trustee had submitted a detailed showing that time had proven this assumption wrong, and Aharoni had seemingly breached his obligations, the release of Aharoni incorporated in the Settlement and the Settlement as a whole had proved improvident.

The Court's jurisdiction to "enforce" the Delaware Stipulation is also not at issue, despite Aharoni's contentions. Courts may generally lack jurisdiction to enforce a stipulation entered into in another court, but a bankruptcy court asked to approve a stipulation has a duty to consider the effect such approval may have on the debtor's

---

[6] Even on his motion for reconsideration Aharoni purports to maintain his "objection" to the Court's jurisdiction. It is quite understandable that Aharoni, a non-resident of the United States, would choose not to attend an evidentiary hearing in New York.

10

estate, and the estate includes entitlements arising from a stipulation the debtor has entered into in another court. *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). The Court's oral ruling, which (as the Court emphasized) was limited to the motion for approval of the Settlement, established only that on the record before the Court, there was uncontradicted evidence that Aharoni had breached the Delaware Stipulation and that the Debtors might have claims against Aharoni. Given the *res judicata* effect that is generally afforded to settlements, approval of the Settlement by this Court would have not only released Aharoni from the claims asserted in the Class Action Litigation. It would also have likely provided Aharoni with a defense in Delaware if the Plan Trustee were to pursue the litigation there. *Ades-Berg Investors v. Breeden (In re Bennett Funding Group, Inc.)*, 439 F.3d 155, 160 (2d Cir. N.Y. 2006). The Plan Trustee established to the Court's satisfaction that this price was unreasonable notwithstanding the cost to the estates of continued litigation.

The Plan Trustee represents the creditors and shareholders of the estate, unlike Aharoni or any other party supporting the Settlement. As noted above, no disinterested creditor supported the Settlement. Under the circumstances, the paramount interests of the creditors and shareholders were better served by the order disapproving the Settlement.

## CONCLUSION

For the reasons stated above, Aharoni's Motion for Reconsideration is denied.

Dated: New York, New York
      April 13, 2009

                              */s/ Allan L. Gropper*
                             UNITED STATES BANKRUPTCY JUDGE