SILVERMANACAMPORA LLP
Attorneys for Plaintiff Kenneth P. Silverman, Esq.,
The Chapter 7 Trustee of
Allou Distributors, Inc., *et al.*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Edward M. Flint
Lon J. Seidman

Hearing Date: April 12, 2011
Time: 11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:

ACTRADE FINANCIAL TECHNOLOGIES LTD., et al.

Debtors.
-----------------------------------------------------------------------x

Chapter 11
Case No. 02–16212 (ALG)

Jointly Administered

### OBJECTION OF ALLOU TRUSTEE TO APPLICATION OF PARK & JENSEN LLP FOR AN ORDER REQUIRING THE LIQUIDATION TRUSTEE TO PAY CERTAIN LEGAL FEES AND EXPENSES

Kenneth P. Silverman, the Chapter 7 Trustee of Allou Distributors, Inc. *et al.* (the "Allou Trustee"), by his attorneys, SilvermanAcampora LLP, submits this objection to Park & Jenson LLP's ("P&J") Application (the "Application") For An Order Requiring The Liquidation Trustee To Pay Certain Legal Fees and Expenses, and respectfully represents as follows:

### BACKGROUND

**The Allou Trustee**

1.   The Allou Trustee is the holder of the largest, and only remaining, Class 3 Unsecured Claim under the Plan.[1] Accordingly, the Allou Trustee is a party in interest with standing to be heard in connection with this matter.

2.   The Allou Trustee's Claim is for more than $54 million and results from the Allou Trustee's efforts to recover more than $54 million in alleged fraudulent transfers (the "Allou Claim") from Allou Distributors, Inc. ("Allou") to Actrade Capital, Inc.

---
[1] All defined terms not otherwise defined herein have the meaning ascribed to them in the Second Amended Joint Plan of Liquidation of Actrade Finance Technologies, Ltd. *et al.* (the "Plan").

("Actrade" and, together with Actrade Financial Technologies, Ltd., the "Debtors"). The Allou Claim has been vigorously opposed by the Actrade Trustee and the Liquidation Trust in litigation that has continued from 2004 until today.

3. The Allou Trustee objects to the relief sought in the Application on the grounds that: (a) P&J was retained by Richard McCormick, a former officer of the Debtors ("McCormick"), and *not* by the Liquidation Trust, the Liquidation Trust Committee (the "Committee") or the Actrade Trustee; (b) under the Plan and the Liquidation Trust Agreement, the Actrade Trustee, lacked authority to obligate the Liquidation Trust to pay for third-parties' attorney fees; (c) the Application asserts no retention agreement benefit the Liquidation Trust or the Actrade Trustee, on the one hand, and P&J on the other, that would form the legal basis for payment of P&J's fees from the Liquidation Trust funds; (d) the Application makes no assertion that Actrade was under any contractual obligation to McCormick for indemnification or for attorneys fees, and, upon information and belief, any such claim would arise from a pre-petition contract and would be a Class 3 Unsecured Claim; and (e) the Application makes no supportable assertion that the services rendered by P&J on behalf of McCormick bestowed any tangible benefit on the Liquidation Trust or its beneficiaries.

## BACKGROUND

4. The Allou Trustee and the Actrade Trustee reached a settlement of the Allou Claim (the "Allou Settlement") in 2009 that is contingent on the Actrade Trustee prevailing on a separate litigation (the "Surety Litigation") commenced against three surety bond companies (the "Sureties"[2]). The Actrade Trustee is not certain that Actrade will prevail in the Surety Litigation against the insurers. If the Liquidation Trust does not succeed in the Surety Litigation, the Allou Claim will be tried before this Court.

---

[2] The defendant "Sureties" are: Greenwich Insurance Company, XL Reinsurance America (f/k/a NAC Reinsurance Corporation), and Great American Insurance Company.

2

5. Unfortunately, as this Court is aware, the funds currently on hand in the Litigation Trust are not nearly sufficient to pay the Allou Claim. In fact, as the Court is aware, even before the Surety Litigation was commenced, serious questions were raised regarding the massive amount of expenditures made by the Actrade Trustee and the Committee since the confirmation of the Plan. Accordingly, by the time the Actrade Trustee moved for approval of the Allou Settlement, he, and the Committee, should have been well aware that their fiduciary duties required the utmost discretion when deciding whether or not to undertake new financial obligations on behalf of the Liquidation Trust.

6. Because there is no authority for the Actrade Trustee's alleged oral promise to reimburse the former officer for defense costs, and because there is no demonstrated tangible benefit to the Liquidation Trust or its beneficiaries from the services provided by P&J, the Application should be denied.[3]

**The Plan And Liquidation Trust Agreement**

7. Under the Plan[4] and the Liquidation Trust Agreement dated January 8, 2004 (the "Trust Agreement"),[5] the Committee and Actrade Trustee succeeded to the duties and obligations of the Debtors' boards of directors and to the fiduciary duties owed by the boards of directors. Both of the Debtors were entities incorporated in Delaware.[6]

8. The Liquidation Trust was created under the Plan (Plan, Art. VII). Pursuant to Article's VI and VII of the Plan, (a) all of the Debtors' assets were transferred

---

[3] The Allou Trustee does not fault or question the quality of the services rendered by P&J **on behalf of McCormick**. This objection simply addresses the issue of who should pay for those services.

[4] A true and accurate copy of the Plan is attached hereto as **Exhibit 1**.

[5] A true and accurate copy of the Trust Agreement (without amendments) is attached hereto as **Exhibit 2**.

[6] Accordingly, the fiduciary duties assumed by the Actrade Trustee and the Committee are governed by express terms of the Plan, the Liquidation Trust Agreement and Delaware law, including the case law defining those duties when an entity is in the "zone of insolvency."

to the Liquidation Trust (Plan, Art. 7.1), (b) the Liquidation Trust became the successor to the Debtors' shareholders and directors (Plan, Art. 6.1) and assumed fiduciary duties "as applicable to a board of directors …" (Plan, Art. 62.), and (c) the Liquidation Trust was empowered to exercise its obligations, duties, and powers through the Actrade Trustee and the Committee (Plan, Arts. 6.2 and 7.5).  *See also* Trust Agreement, ¶s 1.1, 2.1, and 3.1.

9. The Liquidation Trust was created for the purpose of:

> "(i) acting for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to a board of directors, subject to the Plan; and (ii) to fulfill all duties and powers of the Liquidation Trust as provided under the Plan, the Confirmation Order and this Liquidation Trust Agreement. In particular, the Liquidation Trust, *by and through the [Actrade] Trustee*, shall … (c) make Cash distributions to the holders of Allowed Claims and Interests *in accordance with the priorities set forth in the Plan and herein* …."

Trust Agreement, ¶ 1.1 (emphasis added).

10. Paragraph 3.1 of the Trust Agreement states that the Actrade Trustee's powers are "[s]ubject to the limitations and fiduciary duties set forth in this Liquidation Trust Agreement, the Plan, the Confirmation Order and the Liquidation Trustee Employment Agreement …."

11. Thus, the Plan and the Trust Agreement approved by this Court envisioned a Liquidation Trust administered by the Actrade Trustee as a fiduciary for the benefit of holders of Claims and Interests.  As the holder of the largest, and now the only remaining, Class 3 Unsecured Claim, the Allou Trustee is clearly a beneficiary of the fiduciary duties owed by the Actrade Trustee and the Committee, even if, at this time, a contingent beneficiary.

## THE INSTANT APPLICATION

12. The Application arises out of a claim asserted against McCormick, a third-party defendant in the Surety Litigation.

13.   The Application states that in June 2009, in the Surety Litigation, the defendant Sureties filed a third-party complaint against various persons, including McCormick.  (Application at p.2)

14.   The Application further asserts that, upon being served with the third-party complaint, McCormick demanded that the Liquidation Trust pay his legal fees and expenses incurred in connection with his defense of the third-party action.  (*Id.* at p.3)

15.   The Application asserts that the Actrade Trustee acceded to this demand and agreed, "on behalf of the Liquidation Trust," to pay Mr. McCormick's legal fees and expenses, and approved the selection of Park & Jensen as Mr. McCormick's counsel. (*Id.*)

16.   The Application further asserts that Park & Jensen represented McCormick at his deposition, and drafted a motion to dismiss the third-party complaint against him.  (*Id.*)

17.   Although P&J asserts twice in the Application that it "provided substantial value to the Liquidation Trust in its representation of McCormick," the only concrete benefit identified by P&J in the Application is obtaining dismissal of the claims against McCormick.  There is no explanation of how this provided "substantial value" to the Liquidation Trust or to its beneficiaries.

18.   The Application is noteworthy for what it does not allege.  It does not allege that the Liquidation Trust or the Actrade Trustee retained or engaged P&J. Rather, the Application concedes that P&J was retained by McCormick to represent *his interests* in the Surety Litigation, and that the Actrade Trustee merely purported to "approve" P&J "as McCormick's counsel."  (Application, at 3.)

19.   The Application does not refer to or attach any written agreement between P&J and McCormick, on the one hand, and the Actrade Trustee or the Liquidation Trust on the other, concerning the purported obligation to pay McCormick's

5

LSEIDMAN/859863.1/046378

defense costs.  Nor does the Application refer to or attach any minutes or resolution of the Committee authorizing the Actrade Trustee to obligate the Liquidation Trust for McCormick's defense costs.

20.  The Application cites to no employment contract or other agreement between McCormick or either of the Debtors that would obligate the Liquidation Trust to pay McCormick's defense costs.

21.  The Application is silent as to how P&J "closely coordinated its services with those of the Liquidation Trust in the Surety [Litigation]…." (Application, at 3.) However, a review of the time records submitted as exhibits to the Application reveals only two entries that reference any communication with the Actrade Trustee or his counsel.  An entry on August 17, 2009 (Exhibit A to the Application), refers to "emails with co-counsel and with trustee."  A second entry on September 8, 2009, refers to "telephone conference with G. Schwab [Actrade counsel] re same [i.e., McCormick's deposition]." (Exhibit B to Application)

22.  In contrast to the claims of "substantial value" provided to the Liquidation Trust, the Liquidation Trust stated in its Memorandum of Law in Opposition to the Motion of Greenwich and XL for Summary Judgment Based on a Release, dated September 14, 2009 (the "Release Brief"), submitted in the Surety Litigation, that "Actrade CEO Richard McCormick signed the PUSA Settlement but had no recollection of the negotiations at all." (Release Brief, at 12.)  A copy of the Release Brief is attached hereto as **Exhibit 3**. McCormick played no role in the Surety Litigation *for the benefit of the Liquidation Trust* other than to confirm a total lack of memory concerning relevant events.

## THE ALLOU TRUSTEE'S OBJECTION

23.  The Application should be denied.  There is no credible basis stated in the Application to support an obligation by the Liquidation Trust to pay the legal defense costs incurred by McCormick in the Surety Litigation.

24. First, the Plan does not contain any authority for the Actrade Trustee to pay (or agree to pay) McCormick's legal counsel, at the expense of the Liquidation Trust and its intended beneficiaries. P&J was retained directly by McCormick, not by the Liquidation Trust, the Committee or the Actrade Trustee.

25. Second, the Application offers only sweeping (and unsupported) conclusions about how the defense of the third-party complaint against Mr. McCormick in the Surety Litigation provided any tangible benefit to the Liquidation Trust and its intended beneficiaries. A review of the time records supplied with the Application reveals no basis in fact for any benefit to the Liquidation Trust.

26. Nor does the Plan or the Trust Agreement contain any authority for the Actrade Trustee gratuitously to pay (or agree to pay) McCormick's legal fees, at the expense of the Liquidation Trust and its intended beneficiaries.

27. Moreover, even assuming, *arguendo,* that the Actrade estate had a legal duty arising from a prior employment contract to indemnify Mr. McCormick for the fees or costs incurred in his defense of the third-party complaint, such an obligation would merely give rise to an unsecured claim by Mr. McCormick against Actrade. Even if an indemnity obligation existed, it would not permit a dollar for dollar reimbursement in full from the already scarce Litigation Trust funds.

28. Under the circumstances, to the extent the Application is correct in its assertion that the Actrade Trustee agreed to pay Park & Jensen for Mr. McCormick's personal legal fees and expenses, such agreement by the Actrade Trustee was an *ultra vires* act that should not inure to the detriment of the intended beneficiaries of the Liquidation Trust.

7

## **CONCLUSION**

**WHEREFORE,** for the foregoing reasons, the Allou Trustee respectfully requests that the Court deny the Application, with prejudice, and grant such other relief as the Court deems just and proper under the circumstances.

Dated: Jericho, New York
April 5, 2011

        **SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.
Chapter 7 Trustee of Allou Distributors, Inc.,
*et. al.*

By: s/ Edward Flint
     Edward Flint
     Lon J. Seidman
Members of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
516) 479-6300